Cummings, Mayor, *v.* Sharp, Tax Assessor, *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed Dec. 17, 1938.

W. C. CHERRY, City Attorney, and E. C. YOKLEY, JR., and C. G. BLACKARD, Assistant City Attorneys, all of Nashville, for plaintiff in error.

BASS, BERRY & SIMS and ELMER D. DAVIES, all of Nashville, for defendants in error.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Thomas L. Cummings, Mayor of Nashville, filed a specification of charges before the Civil Service and Pension Board of the City of Nashville seeking the removal of Vernon H. Sharp from the office of City Tax Assessor. Among the charges preferred against Sharp was that of "pernicious political activity." On the hearing, the

Board found as a fact that Sharp was guilty of "pernicious political activity," and he was ordered suspended from his office for a period of sixty days. The Board found that there was no proof to sustain the other charges contained in the specification.

No appeal being provided by law from the judgment of the Board, Mayor Cummings filed his petition in the Circuit Court of Davidson County for writ of *certiorari* to review the proceedings before the Board, as a matter of law, to the end that the judgment of the Board suspending Sharp as Tax Assessor be reversed and judgment entered discharging him from office.

The defendant Sharp filed a written motion to dismiss the petition for *certiorari* upon several grounds, the substance of which is that under the provision of the charter of the City of Nashville, and the rules adopted by the Board, employees found guilty of pernicious political activity may in the discretion of the Board be removed, suspended, or otherwise punished. The demurrer of the petitioner, Mayor Cummings, to the motion to dismiss was overruled, the motion was sustained, and the petition was dismissed. From this action of the circuit judge, petitioner has appealed to this court and assigned errors.

The single question presented for determination is whether or not, having found as a fact that Sharp was guilty of pernicious political activity, the Board was without discretion, under the charter provisions, in regard to his punishment.

Section 49 of the charter of the City of Nashville (Chapter 125, Private Acts 1923) provides for the creation of a Civil Service and Pension Board, and among other things it provides that the powers and duties of said Board shall be as follows:

"Be it further enacted. . . . It shall be the duty of the Civil Service and Pension Board to make rules and regulations for the government of the members of the Police and Fire Departments of said city, who are hereafter declared to be civil service employes, and for the government of all other civil service employes; and to punish by dismissal from office, or otherwise, any officer, patrolman, fireman, or other person employed in said department or holding any other city offices or position hereinafter placed under civil service, for any offenses committed by them. The Board of Public Works, which has the exclusive power to elect the officers and members of the Police Force and Fire Department, may prescribe such rules in regard to suitability and physical fitness of applicants and preliminary examination of applicants as said Board of Public Works may deem proper; and said Board of Public Works has the exclusive supervision and control of all its appointees and employes (except members and employes of the Police Department), under the rules and regulations promulgated by the Civil Service and Pension Board. . . .

"No officer, patrolman, fireman or other civil service employe shall be tried or punished for a political or religious belief or practice. If any such civil service employe, however, is guilty of pernicious political activity, it shall subject the offender to discharge; and the following shall amount to pernicious political activity within the meaning of this Act, to-wit: (a) For any policeman or fireman or other civil service employe to appear at the polls in any election held within the city, wearing a badge indicating support of any candidate, ticket or measure in such election, or to hand out or distribute at such polls any cards, circulars or literature concerning any candi-

date, ticket or measure involved in such election, or to seek, in any other manner, at such polls to influence any other voter in casting his or her ballot; and (b) for any such civil employe to use his position in any way to influence others, either directly or indirectly, for or against any particular candidate or measure involved in any election, or to use money or promise of money, oppression or threat of oppression, directly or indirectly, to influence others to cast their votes in any particular way, or for any particular candidate or candidates.''

Section 52 provides, in part, as follows:

''Be it further enacted, That the following officers and employes of said city are hereby declared to be civil service employes, and may be only dismissed, suspended, reduced in rank or otherwise punished, by the judgment of the Civil Service and Pension Board after trial and conviction as hereinabove provided, to-wit: . . . the City Tax Assessor and his assistants in his office and in the field;'' etc.

Pursuant to the provisions of said charter, the Civil Service and Pension Board of the City of Nashville adopted certain rules and regulations. Rule IV provides, in part, as follows:

''Any officer or employe of the City of Nashville under civil service, other than members of the Police Department, heretofore provided for, may be tried and punished or removed for any one of the following offenses, to-wit: . . .

''(7) Pernicious political activities.

''(8) Soliciting orally or by letter, or receiving or paying, or being in any manner concerned in soliciting, receiving or paying any assessment, subscription or contribution for any party or political purpose whatever.''

It is the duty of the court, in the interpretation of the statute here in question, to ascertain and give effect to the legislative intent. *Athens Hosiery Mills* v. *Thomason,* 144 Tenn., 159, 231 S. W., 904; *State ex rel.* v. *Howse,* 132 Tenn., 452, 178 S. W., 1110. The intent of the statute as a whole must be determined. *Hedges* v. *Shipp,* 166 Tenn., 451, 62 S. W. (2d), 49. Its meaning is to be determined, not from special words in a single sentence or section, but from the act taken as a whole, and viewing the legislation in the light of its general purpose. *Board of Park Commissioners* v. *Nashville,* 134 Tenn., 612, 185 S. W., 694.

Under section 49 of the charter, it is made the duty of the Civil Service and Pension Board to make rules and regulations for the government of the members of the Police and Fire Departments, and "all other civil service employes; *and to punish by dismissal from office, or otherwise,* any officer, patrolman, fireman, or other person employed in said department *or holding any other city offices* or position hereinafter placed under civil service, for *any offenses* committed by them." (Italics ours.)

It is further provided by section 49 that "No officer . . . or other civil service employe shall be tried or punished for a political or religious belief or practice. If any such civil service employe, however, is guilty of pernicious political activity, *it shall subject the offender to discharge;* and in the following shall amount to pernicious political activity within the meaning of this Act, to-wit: . . ." (Italics ours.)

Under section 52 of the charter it is provided that the civil service employees *"may be only dismissed, suspended, reduced in rank or otherwise punished, by the judgment of the Civil Service and Pension Board after*

trial and conviction as hereinabove provided," and among others, the City Tax Assessor and his assistants are declared to be civil service employees. (Italics ours.)

It is earnestly contended for the petitioner that the words, "If any such civil service employe, however, is guilty of pernicious political activity, it shall subject the offender to discharge," found in the fourth paragraph of section 49 make it mandatory on the Board to discharge an employee found guilty of that offense. These words follow immediately after the provision that "No officer . . . or other civil service employe shall be tried or punished for a political or religious belief or *practice*." (Italics ours.) In order to make it clear that the exemption from punishment for a political *practice* did not include pernicious political activity as defined, the words, "If any such civil service employe, however, is guilty of pernicious political activity, it shall subject the offender to discharge," were added.

In view of the fact that under the second paragraph of section 49 the unqualified power was conferred on the Board "to punish by dismissal from office, or otherwise," any civil service employee "for any offenses committed by them," which, of course, includes the offense of pernicious political activity, we are unable to agree that the broad discretion vested in the Board, as to the *quantum* of punishment, is restricted in the case of pernicious political activity to discharge from office. The words "shall subject the offender to discharge," when taken in connection with the whole Act, cannot be construed to mean anything more than one found guilty of the offense of pernicious political activity may be removed from office. It is not in accord with any rule of statutory construction to lift one sentence out from the

statute and construe it alone, without reference to the balance of the statute. Much has been said in argument and brief with reference to the technical meaning of the word "subject" as defined by lexicographers. But in this case, as in all others involving the construction of statutes, the sole question is: What was the legislative intent? This principle was applied in *Kelly & Co.* v. *State,* 123 Tenn., 516, at page 527, 132 S. W., 193, where technical definitions were urged on the court in a case involving statutory construction.

■ ■ To give the words, "shall subject the offender to discharge," the interpretation contended for by petitioner would create a repugnancy in the Act, in that under another paragraph of the same section in which these words are found the Board is given the express power, without exception or reservation, to punish guilty employees "by dismissal from office, or otherwise, . . ., for *any* offenses committed by them." (Italics ours.) The Act creates a Board to sit as a *quasi* court to hear and pass upon charges filed against civil service employees. The Board being *quasi* judicial in character, the Legislature gave it latitude and discretion in fixing the punishment according to the merits of each particular case, and this latitude or discretion extended to "any" offense of which an employee might be found guilty. Again, in section 52 of the Act, it is expressly provided that civil service employees, including the Tax Assessor, "may be only dismissed, suspended, reduced in rank or otherwise punished." The intent to confer upon the Board a broad discretion in fixing the punishment of civil service employees found guilty of any offense, apparent from the Act, cannot, properly, be cut down in the case of pernicious political activity by giving

the words "shall subject the offender to discharge" a meaning repugnant to the balance of the Act. A statute is to be construed so as to give effect and meaning to every part thereof, and avoid, if possible, any repugnancy or inconsistency. *Wilcox v. State,* 50 Tenn. (3 Heisk.), 110; *Ashby v. State,* 124 Tenn., 684, 139 S. W., 872; *State ex rel. Thomason v. Temple,* 142 Tenn., 466, 220 S. W., 1084.

■ ■ The words, "shall subject the offender to discharge," when construed in the light of the whole Act, mean nothing more than that an employee found guilty of pernicious political activity is liable to discharge. We have hereinbefore stated why, in our opinion, the above-quoted words were added to the provision that no civil service employee shall be tried or punished for a political or religious belief or practice.

Pursuant to the power conferred by the Act, the Board, on June 2, 1931, promulgated Rule IV, hereinbefore set out, which specifically states that any civil service employee "may be tried and punished or removed for any one of the following offenses, to-wit: . . . (7) Pernicious political activities." The practical construction thus given the Act by the Board is entitled to persuasive weight in the judicial construction of the same. *Cumberland Lodge v. Nashville,* 127 Tenn., 248, 154 S. W., 1141; *New England Mutual Life Ins. Co. v. Reece,* 169 Tenn., 84, 83 S. W. (2d), 238.

Upon a careful consideration of all of the assignments of error, we are constrained to overrule the same and affirm the judgment of the trial court. Appellant will pay the costs of the appeal.